UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

GENE LEE BRABENDER,

              Plaintiff,

     v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations,

              Defendant.

NO. C17-5990-JPD

ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff Gene Lee Brabender appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Commissioner's decision is REVERSED and REMANDED.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-two year old man with an eleventh grade education. Administrative Record ("AR") at 819. His past work experience includes employment as a grinder operator, store laborer, clean up worker, power washer, torch

ORDER - 1

cutter, home health aide, and landscape laborer. AR at 848. Plaintiff was last gainfully employed in 2012, occasionally performing odd jobs. AR at 16.

On December 18, 2013, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of January 23, 2012. AR at 14, 99-115, 811. Plaintiff asserts that he is disabled due to coronary artery disease, status post myocardial infarction and coronary artery bypass graft surgery, depression/affective disorder, cervical degenerative disc disease, lumbar degenerative disc disease, osteoarthritis of the hip, sternal pain, and umbilical hernia. Dkt. 14 at 2-3.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 67-69, 71-73. Plaintiff requested a hearing, which took place on June 1, 2016 in Portland, Oregon. AR at 806-54. On July 19, 2016, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-28. Plaintiff's request for review was denied by the Appeals Council, AR at 6-10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 29, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 1.

II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

ORDER - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV. EVALUATING DISABILITY

As the claimant, Mr. Brabender bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are

ORDER - 3

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

ORDER - 4

residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On July 19, 2016, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2. The claimant has not engaged in substantial gainful activity since January 23, 2012, the alleged onset date.

3. The claimant has the following severe impairments: coronary artery disease, status post myocardial infarction and coronary artery bypass graft surgery; depression/adjustment disorder; cervical degenerative disc disease; lumbar degenerative disc disease; polysubstance abuse; and osteoarthritis of the hip.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant is able to perform work that does not require climbing ladders, ropes, and scaffolds. The claimant is able to frequently climb ramps and stairs; frequently balance; occasionally stoop, kneel, crouch, and crawl. The claimant is able to perform simple, routine tasks (defined as not greater than reasoning level 2); and the claimant requires a sit/stand option (defined as the ability to change position after thirty to sixty minutes for three to five minutes while remaining on task).

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age.[2]

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 23, 2012, through the date of this decision.

AR at 16-27.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Did the ALJ err in evaluating plaintiff's testimony?

Dkt. 14 at 1-2; Dkt. 15 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

*1. Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

747, 751 (9th Cir. 1989); see also *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives

more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

    2.    *Charles Quinci, Ph.D.*

At the request of the Department of Social and Health Services (DSHS), Charles Quinci, Ph.D. twice evaluated plaintiff in April and October 2013. AR at 640-644, 655-658. Specifically, in April 2013, he conducted a psychological evaluation with mental status examination. AR at 640-644. Dr. Quinci diagnosed plaintiff with adjustment disorder – depressed mood, and assessed his Global Assessment of Functioning (GAF) score at 47.[3] AR at 641. Dr. Quinci opined that plaintiff is moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision, and moderately limited in his ability to complete a normal work day and work week without interruptions from psychologically based symptoms.[4] AR at 642. When Dr. Quinci evaluated plaintiff again in October 2013, Dr. Quinci diagnosed plaintiff with an adjustment disorder – depressed mood-mild, and assessed his GAF score at 52. AR at 655-58. Significantly, Dr. Quinci opined that plaintiff is moderately limited in his ability to

---

[3] The GAF score is a subjective determination based on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed. 2000). A GAF score falls within a particular 10-point range if either the symptom severity or the level of functioning falls within the range. *Id.* at 32. For example, a GAF score of 51-60 indicates "moderate symptoms," such as a flat affect or occasional panic attacks, or "moderate difficulty in social or occupational functioning." *Id.* at 34. A GAF score of 41-50 indicates "[s]erious symptoms," such as suicidal ideation or severe obsessional rituals, or "any serious impairment in social, occupational, or school functioning," such as the lack of friends and/or the inability to keep a job. *Id.*

[4] "Moderate" is defined as "significant limits on the ability to perform one or more basic work activity" AR at 642.

ORDER - 8

complete a normal work day and work week without interruptions from psychologically based symptoms. AR at 657.

The ALJ stated she gave Dr. Quinci's opinions "great weight," finding them consistent with his examinations, treatment records and activities. AR at 22-23. The only mental functional limitation the ALJ included in her RFC finding was that plaintiff is limited to performing simple, routine tasks (defined as not greater than reasoning level 2). AR at 19.

Plaintiff argues that the ALJ did not include Dr. Quinci's opinion in her RFC finding, or provide a legally sufficient reason to reject the opinion. AR at 19, 642, 657. Specifically, the ALJ did not include any limitation on plaintiff's ability to complete a normal workday or workweek. Dkt. 14 at 5. The Commissioner contends that "the Ninth Circuit has expressly held that an RFC limitation to simple, routine, repetitive work satisfactorily captures a restriction to moderate limitations in concentration, persistence, or pace." Dkt. 15 at 6 (citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008)). The Commissioner asserts that "[h]ere, as in *Stubbs-Danielson,* the RFC assessment supported the examining doctor's opinion." *Id*. Plaintiff responds that contrary to the Commissioner's argument that "a limitation to simple, routine, repetitive work satisfactory captures a moderate limitation in concentration, persistence or pace," Dr. Quinci did not opine a moderate limitation in plaintiff's concentration, persistence or pace. Instead, he found a moderate limitation in attendance, punctuality, performing activities within a schedule, and completing a normal work day or work week without psychological interruptions. AR at 642, 647.

Plaintiff is correct. The ALJ stated that she afforded Dr. Quinci's October 2013 opinion "great weight overall," as it "is consistent with both of his examinations, and it is consistent with the claimant's activities." AR at 23. However, it is not at all clear how the ALJ's limitation to "simple, routine tasks (defined as not greater than reasoning level 2)" would

ORDER - 9

account for Dr. Quinci's opinion that plaintiff would have moderate, i.e., "significant," limitations on his ability to maintain attendance, keep up with a schedule, and complete a normal workday or workweek without interference from mental health symptoms, as set forth in Dr. Quinci's April 2013 opinion. AR at 642, 657. Moreover, the ALJ did not even acknowledge Dr. Quinci's October 1, 2013 opinion that plaintiff would have difficulty completing a normal workday or workweek without interference from mental health symptoms. AR at 22-23, 647. Especially in light of the vocational expert's testimony that an individual who missed work over two days per month would not be competitive, AR at 852, the ALJ erred by failing to either include these aspects of Dr. Quinci's opinions in the RFC, or provide legally sufficient reasons for rejecting them. This error was not harmless, and this case must be remanded for further administrative proceedings so the ALJ can reevaluate Dr. Quinci's opinions.

          3.      *Erum Khaleeq, M.D.*

At the request of the Disability Determination Service (DDS), Erum Khaleeq, M.D. evaluated plaintiff in August 2014. AR at 715-718. She performed a psychiatric evaluation, which included a clinical interview, mental status examination, and record review. Dr. Khaleeq diagnosed plaintiff with depression due to general medical condition, bereavement and alcohol abuse. AR at 718. Dr. Khaleeq opined that plaintiff could perform simple and repetitive tasks but may have difficulty doing detailed and complex tasking, could accept instructions from supervisors; may have difficulty performing work activities on a consistent basis; may have difficulty maintaining regular attendance in the workplace; may have difficulty completing a normal workday/workweek "as he may get interrupted from his physical condition causing him depression"; and the usual stress encountered in the workplace could further aggravate his feelings of helplessness and hopelessness. AR at 718.

The ALJ acknowledged Dr. Khaleeq's limitation to simple routine tasks, and that plaintiff may "struggle with consistency and attendance, and depression and physical problems could make it difficult to complete a normal workweek." AR at 23. "Lastly, he opined that the claimant would have difficulty with work stress." AR at 23. The ALJ stated she gave Dr. Khaleeq's opinion "partial weight," because the statement regarding plaintiff's ability to complete a workweek appears to be based on plaintiff's "subjective allegations, which have been inconsistent overall (e.g., regarding substance use, the ability to perform chores, and the contrast between alleged physical limitations and the ability to walk several miles per day)." AR at 23. The ALJ found that Dr. Khaleeq's opinion regarding simple, routine tasks is consistent with Dr. Quinci's evaluations and plaintiff's activities. AR at 23.

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Khaleeq's opinion, because the ALJ did not point to any specific evidence that Dr. Khaleeq based her opinion regarding plaintiff's difficulty completing a normal workweek on anything other than her professional expertise. Dkt. 14 at 8. Dr. Khaleeq performed a record review and conducted a clinical interview and mental status examination, which is a medically acceptable diagnostic technique. Plaintiff asserts that vocational expert testimony established that an individual missing work over even two days a month would not be competitive. Dkt. 14 at 8 (citing AR at 852).

The Commissioner contends that an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. Dkt. 15 at 7 (citing *Tommasetti*, 533 F.3d at 1041). Thus, the Commissioner argues that the ALJ could discount plaintiff's statements in part because she found his reporting was inconsistent. The Commissioner then argues that "where, as here, a doctor's conclusions are unsupported by her findings, the ALJ may reasonably infer that they were

based on a claimant's subjective statements, and the ALJ may reasonably discount them." *Bayliss*, 427 F.3d at 1216.

As discussed below, the ALJ erred in evaluating plaintiff's testimony in this case, and must reevaluate it on remand. For example, the ALJ noted that plaintiff "declined counseling," and sought "mental health treatment only in conjunction with treatment for his physical problems." AR at 22. The ALJ further noted that Dr. Conway had observed depression in March 2014 and prescribed Prozac, but plaintiff remained "depressed following his girlfriend's death," was drinking alcohol to self-medicate, and "in April 2016, Dr. Conway noted that the claimant was crying all the time despite using Prozac." AR at 22. Based upon the ALJ's own analysis, it is not clear why the ALJ believed that plaintiff's depression was not a severe impairment, or that plaintiff would not be limited by his mental health symptoms.

Similarly, the Court finds that the ALJ did not provide specific and legitimate reasons to reject Dr. Khaleeq's opinion that plaintiff would have difficulty sustaining work because of his depressive symptoms. It is not clear why the ALJ believed that this aspect of Dr. Khaleeq's opinion must have been based on plaintiff's unreliable statements, rather than the results of her record review (which reflect consistent diagnoses of depression by DSHS psychological evaluators), clinical interview, and mental status examination, which included observations of a "depressed/congruent" affect. AR at 715, 717. On remand, the ALJ shall reevaluate Dr. Khaleeq's opinion, and provide legally sufficient reasons for rejecting her opinion, if such a conclusion is warranted.

    4. *Peter Weiss, Ph.D.*

At the request of DSHS, Peter Weiss, Ph.D., evaluated plaintiff in September 2015. AR at 778-781. Dr. Weiss conducted a psychological evaluation with record review, clinical interview, and mental status examination. He diagnosed plaintiff with major depressive

disorder, recurrent, moderate; and rule out cannabis abuse. AR at 779. Dr. Weiss opined that plaintiff is markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and markedly limited in his ability to complete a normal work day or work week without interruptions from psychologically based symptoms. AR at 780. In addition, he is moderately limited in his ability to communicate and perform effectively in a work setting; moderately limited in his ability to understand, remember and persist in tasks by following detailed instructions; moderately limited in his ability to learn new tasks; moderately limited ability to adapt to changes in a routine work setting; moderately limited in his ability to maintain appropriate behavior in a work setting; and moderately limited in his ability to set realistic goals and plan independently. "Marked" is defined as "very significant limitation on the ability to perform one or more basic work activity." "Moderate" is defined as "significant limits on the ability to perform one or more basic work activity." AR at 780.

The ALJ stated she gave little weight to Dr. Weiss' opinion, stating there are minimal treatment records because "the claimant refused counseling." AR at 23. Despite plaintiff's allegations of depression, the ALJ asserted that the plaintiff "was able to take care of himself and his dog when he lived in the woods." AR at 23. The ALJ further found that Dr. Weiss's analysis was "inconsistent with the mental status examination, which showed only a depressed mood, a dysthymic affect, and the inability to perform serial 7s. In contrast, all other aspects of the mental status examination were normal." AR at 23.

The ALJ erred by dismissing plaintiff's report of depressive symptoms, as well as numerous doctors' opinions regarding ongoing limitations resulting from plaintiff's depression (despite his prescription for Prozac) because the ALJ did not credit plaintiff's explanation that he did not believe counseling would help him. During the hearing, plaintiff explained that he

ORDER - 13

considered counseling to be "like going to an AA meeting. I've had to go to AA meetings and to listen to everybody's stories makes you want to drink." AR at 829. He stated that "it's not like I don't cry all the time anyway," and "counseling isn't going to do any good to get rid of my pain [from his physical conditions] because that belongs to me." AR at 829. The Ninth Circuit has long recognized that social security claimants who suffer from mental health issues may fail to seek treatment, in part, as a result of their condition. In addition, the ALJ's rejection of plaintiff's symptoms of depression based upon the fact that he was able to survive in the woods with a dog for six months, while he was homeless, is not specific, legitimate, or supported by substantial evidence. AR at 831. The ALJ did not explain how any of plaintiff's activities in the woods were contrary to any of Dr. Weiss' opinions. Finally, the Court notes that the ALJ's reasoning that simply because plaintiff has had a girlfriend in the past and currently has roommates (apparently out of financial necessity), he is not limited in his ability to communicate and perform effectively in a work setting, is not persuasive.

On remand, the ALJ should also reevaluate Dr. Weiss' opinion, and provide legally sufficient reasons for rejecting it, should such a conclusion be warranted.

     5.     *Gail Conway, D.O.*

At the request of the DSHS, plaintiff's treating physician, Gail Conway, D.O., examined plaintiff in April 2013. AR at 549-555, 635-639. Dr. Conway diagnosed plaintiff with lumbar degenerative disc disease, umbilical hernia, sternal pain. AR at 554, 636. She opined plaintiff is limited to sedentary work, and "should be limited to lifting 10 [pounds] maximum" due to his physical limitations. AR at 555, 637.

The ALJ stated she gave "little weight" to Dr. Conway's opinion, stating it lacked support in the medical records because Dr. Conway's examination was "unremarkable, aside from limited extension of the lumbar spine" and "this is true even though the claimant was not

ORDER - 14

taking his blood pressure medications at the time." AR at 24. The ALJ further found that plaintiff's "activities, subsequent examinations, and overall improvement while taking medications support fewer limitations." AR at 24.

Plaintiff argues that the ALJ ignored the fact that Dr. Conway reported she "reviewed the patient's medical history in detail," including the medical records regarding his two vessel coronary artery bypass grafts of January 2012, after having suffered an acute myocardial infarction. AR at 549-550. She further reviewed his lumbar MRI, AR at 551, as well as his April 2013 lumbosacral spine x-ray that showed "degenerative disc and spondylitic change most prominent in the lower lumbar spine. Changes most marked at L5 S1 where there is prominent degenerative disc narrowing with vacuum disc change. More moderate change seen at L4-L5. Moderate prominent arthritic change seen in the facet joints. These findings certainly could combine to create a spinal stenosis pattern." AR at 554. Finally, plaintiff argues that the ALJ ignored the fact that Dr. Conway additionally found an umbilical hernia. AR at 553.

Plaintiff is correct. The ALJ's suggestion that Dr. Conway was relying upon an unremarkable physical examination which simply showed some limited range of motion in the lumbar spine is not accurate. A review of Dr. Conway's opinions reflects Dr. Conway's consideration of objective test results such as an MRI showing lumbago, and "degeneration of lumbar or lumbosacral intervertebral discs." AR at 554. If the ALJ was attempting to suggest that these objective findings did not support Dr. Conway's opinion, she needed to have been much more specific and explained her reasoning. Without more, an ALJ's conclusory statement that objective findings did not support a doctor's opinion not a specific and legitimate reason to reject a doctor's opinion. *See Embrey v. Bowen*, 849 F.2d 418 (9th Cir. 1988).

ORDER - 15

The ALJ also stated, "the claimant's activities, subsequent examinations, and overall improvement while taking medications support fewer limitations." AR at 24. In light of the ALJ's failure to discuss Dr. Conway's opinion in relation to the objective test results showing limitations resulting from plaintiff's degenerative disc disease, the ALJ's conclusory assertion that fewer limitations were warranted is not specific, legitimate, or supported by substantial evidence. The ALJ failed to provide any specificity as to what activities, subsequent examination, or evidence of improvement she considered Dr. Conway's opinion to be inconsistent with, or how they were inconsistent. On remand, the ALJ shall reevaluate Dr. Conway's opinion in light of the direction provided by this Order.

### B. The ALJ Erred In Evaluating Plaintiff's Testimony

#### 1. *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the

claimant's testimony.[5] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. On Remand, the ALJ Should Reevaluate Plaintiff's Testimony

The ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony about the severity of his symptoms in this case. Specifically, the ALJ asserted that plaintiff's "statements concerning the intensity, persistence and limiting effects of [plaintiff's] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR at 20. The ALJ then included a nearly two-page summary of the medical evidence in this case, without explaining how or why that evidence was inconsistent with plaintiff's allegations. AR at 20-22. The ALJ's summary of the medical evidence is not a credibility analysis.

---

[5] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. This change was effective March 28, 2016 and was therefore applicable to the August 29, 2014 ALJ decision in this case. The Court, however, continues to cite to relevant case law utilizing the term credibility.

ORDER - 17

The only two reasons the ALJ discounted plaintiff's testimony that are discernible from the ALJ's lengthy summary are that the ALJ found (1) "the claimant's activities are inconsistent with allegations of disabling pain, depression, and cardiovascular symptoms"; and (2) "the claimant made inconsistent statements about substance abuse." AR at 20. As discussed above, however, the fact that plaintiff had to walk several miles to town to shop for necessities about twice per week when he was living homeless in the woods does not, without more, undermine his testimony that he experiences pain from physical activity and would have difficulty in a work setting. AR at 20. The ALJ made no findings about what activities consumed a substantial part of his day, or how they were transferable to a work setting. Similarly, the fact that he was "resourceful enough" to survive in the woods when he was homeless, despite his depression, does not necessarily indicate that he would not have a limited ability to function in the workplace without interruptions from his psychological symptoms, as found by all his examining doctors. AR at 20. These are not clear and convincing reasons for discounting plaintiff's testimony.

Finally, the ALJ noted that plaintiff reported variable alcohol usage over time and "his pattern of alcohol use is unclear." AR at 20. The ALJ found that "the fact that the claimant consumes alcohol is not at issue in this case, but the fact that he has provided inconsistent statements on the subject is relevant to the overall persuasiveness of his statements regarding the severity of his symptoms." AR at 20. The ALJ then noted that plaintiff testified that he now uses marijuana two or three times a week, and that he cut back on his formerly heavy alcohol use of up to a fifth per day. AR at 20. However, the ALJ then fails to identify any inconsistent statements that contradict plaintiff's report that he still drinks alcohol and smokes marijuana, but his intake of alcohol was now less than a fifth per day. AR at 20. Plaintiff reported still consuming alcohol in March 2016, and in April 2013 he reported drinking

alcohol twice per week. Two months later, he reported splitting a pint of whisky with friends on the weekends. In August, 2014, he reported consuming two fifths of alcohol each week. AR at 20. Thus, the ALJ did not actually identify any inconsistent statements made by plaintiff regarding his substance use. Rather, it appears that plaintiff's alcohol intake has varied over time, and if anything, he has been candid about the fact that he continues to self-medicate his depressive symptoms with alcohol and marijuana, even if his pattern of intake is not always consistent and he is taking other medications. AR at 20. As the ALJ did not actually identify inconsistent reports by plaintiff regarding his substance abuse apart from what could reasonably be expected due to variable intake over time, this was not a clear and convincing reason for the ALJ to give plaintiff's testimony less weight. On remand, the ALJ shall reevaluate plaintiff's testimony.

## VIII. CONCLUSION

For the foregoing reasons, this case is REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.

DATED this 28th day of August, 2018.

JAMES P. DONOHUE
United States Magistrate Judge